GENOVEVA CÁTALA MELÉNDEZ, apelante, *v.* PEDRO SOTO RÍOS, ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, apelado.

*Número:* AA-95-107      *Resuelto:* 14 de abril de 1999

*Andrés Cruz González*, del *Bufete Ortiz Ubiñas & Aldahondo Delgado*, abogado de la apelante; *María I. Pagán Parés*, abogada de la Corporación del Fondo del Seguro del Estado, apelado.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

I

La Sra. Genoveva Cátala Meléndez ha laborado en la Lotería de Puerto Rico (Departamento de Hacienda) en calidad de Oficinista de Lotería II por espacio de quince (15) años, específicamente en la oficina de preparación y distribución de billetes de lotería. En diciembre de 1991, un oficial del Departamento de Hacienda le notificó que había sido destituida de su empleo debido a que no había rendido las planillas de contribución sobre ingresos correspondientes a 1987, 1988 y 1989.(¹) En la carta en la que se le notificó su destitución se le informó, además, que tenía derecho a solicitar una vista administrativa para dilucidar las imputaciones hechas en su contra. Apéndice de la petición de revisión, pág. 5; *exhibit* 5. La señora Cátala Meléndez alega que permaneció destituida por espacio de una se-

---

(¹) Eventualmente, la señora Cátala Meléndez aceptó que no rindió las planillas de contribución sobre ingresos en los referidos años.

mana, al cabo de la cual fue restituida a su puesto, ya que el Departamento de Hacienda le reconoció su derecho a una vista administrativa previa a su destitución.([2])

En mayo de 1992, el Departamento de Hacienda le notificó nuevamente a Cátala Meléndez que se le destituía de su puesto. Además, el Departamento le informó que fue citada a una vista administrativa a la cual no compareció. Surge del expediente que luego de remitir esta misiva, el Departamento de Hacienda aceptó las excusas de la señora Cátala Meléndez en cuanto a su incomparecencia a la vista administrativa y la citó a una nueva vista.

Celebrada ésta, el Departamento de Hacienda estimó probadas las imputaciones contra la señora Cátala Meléndez. Sin embargo, en lugar de destituirla permanente, el Departamento optó por suspenderla de empleo y sueldo por once (11) meses. Al finalizar este término, la señora Cátala Meléndez alegó que no pudo reanudar sus labores en la Lotería de Puerto Rico por habérsele agravado una condición nerviosa que padecía.([3])

Así las cosas, el 10 de agosto de 1992 la señora Cátala Meléndez acudió a las oficinas del Fondo del Seguro del Estado para solicitar tratamiento psiquiátrico. En esa ocasión alegó que, debido a "sucesivas destituciones en su lugar de trabajo sin haberle permitido cuestionar las mismas, se le ha agravado su condición emocional". Apéndice, pág. 1.

El 20 de octubre de 1992, el Fondo del Seguro del Estado emitió una resolución mediante la cual denegó los beneficios solicitados. Resolvió que la condición emocional

---

([2]) Conforme surge del expediente, la señora Cátala Meléndez solicitó mediante carta una vista administrativa tan pronto le fue notificada su destitución. Sin embargo, el Departamento de Hacienda aduce que no recibió la comunicación. Ante las alegaciones de la señora Cátala Meléndez, el Departamento optó por reinstalarla en su puesto en lo que se dilucidaban los cargos en una vista administrativa.

([3]) Surge del expediente que en la actualidad la señora Cátala Meléndez se encuentra laborando en el mismo puesto en el Departamento de Hacienda. Informe del Oficial Examinador de la Comisión Industrial, pág. 3; Apéndice, pág. 16.

que padecía la señora Cátala Meléndez no guardaba relación causal con las funciones de su puesto.

Inconforme con esta determinación, Cátala Meléndez acudió ante la Comisión Industrial. Dicho foro apelativo administrativo la refirió a la Dra. Alina Vale, psiquiatra consultora de la Comisión Industrial, para que le efectuara una evaluación psiquiátrica y rindiera un informe. Eventualmente, se celebró una vista administrativa ante un Oficial Examinador, el cual, en su informe, recomendó confirmar la decisión del Fondo del Seguro del Estado y el archivo definitivo del caso. La Comisión Industrial actuó en conformidad con esa recomendación. Una moción de reconsideración fue acogida y declarada no ha lugar por ese foro administrativo. Eventualmente, Cátala Meléndez acudió ante este Tribunal.[4]

En su único señalamiento de error plantea que la Comisión Industrial erró al denegarle los beneficios de la Ley del Sistema de Compensaciones por Accidentes del Trabajo (en adelante la Ley de Compensaciones), Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq*. Sostiene que "fue unánime la opinión pericial de los psiquiatras que prestaron testimonio en la vista pública" en términos de que "la condición emocional que padece ... guarda relación causal con las sucesivas destituciones de que ésta fue víctima por parte de su patrono". Alegato de la apelante, pág. 7. Por ello, nos invita a que resolvamos que "[e]l manejo altamente irregular por parte del patrono, provocando destituciones sucesivas contra la obrera-[apelante] constituye un accidente laboral genuino protegido bajo la Ley de Compensaciones". Alegato de la apelante, pág. 8.

---

[4] Aunque, Cátala Meléndez tituló su escrito como recurso de revisión, se trata de un recurso de apelación, ya que fue presentado ante nos bajo la vigencia de la disposición de la Ley de la Judicatura que disponía que este Foro revisaría mediante apelación las decisiones finales de la Comisión Industrial. Véanse: Art. 3.002(d) del Plan de Reorganización de la Rama Judicial Núm. 1 de 28 de julio de 1994 (4 L.P.R.A. 22i(d)); *Farmacias Moscoso, Inc. v. K-Mart Corp.*, 138 D.P.R. 497 (1995).

Como puede apreciarse, las alegaciones de la señora Cátala Meléndez, en cuanto a la compensabilidad de la lesión que ha sufrido, se fundamentan en que el proceso que culminó en su suspensión temporal de empleo y sueldo le produjeron una lesión incapacitante que la hace acreedora a los beneficios de la Ley de Compensaciones. Por lo tanto, de entrada debemos resolver si una lesión emocional originada como consecuencia de un procedimiento disciplinario administrativo *bona fide* constituye una lesión compensable al amparo de la Ley de Compensaciones.

## II

La Ley de Compensaciones es un estatuto de naturaleza remedial que pretende brindar al obrero ciertas protecciones y beneficios en el contexto de accidentes ocurridos en el escenario de trabajo. Con este fin establece un esquema de seguro compulsorio cuya finalidad es "proveerle a los obreros que sufren alguna lesión o enfermedad que ocurra en el curso del trabajo y como consecuencia del mismo, un remedio rápido y eficiente libre de las complejidades de una reclamación ordinaria en daños". *Pacheco Pietri y otros v. E.L.A. y otros*, 133 D.P.R. 907, 914 (1993). Véase *Soc. de Gananciales v. Royal Bank de P.R.*, 145 D.P.R. 178 (1998). En este sentido, la Ley de Compensaciones "cubre los casos de incapacidad transitoria, incapacidad parcial permanente e incapacidad total permanente. Además, ... provee beneficios de asistencia médica y medicinas, dirigidos a lograr la rehabilitación de los obreros accidentados o afectados en el transcurso del empleo". A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 5ta ed. rev., Ramallo Printing Bros., 1995, pág. 409. A cambio de estos beneficios, el patrono asegurado adquiere inmunidad absoluta contra cualquier reclamación relacionada a la lesión originada en el empleo y como consecuencia de éste, independientemente del grado de ne-

gligencia que se le pueda atribuir. *Soc. de Gananciales v. Royal Bank de P.R.*, supra.

■ Conforme al Art. 2 de la Ley de Compensaciones, sus beneficios están disponibles para

> ... todos los obreros y empleados que trabajen para los patronos a quienes se refiere el párrafo siguiente, que sufran lesiones o se inutilicen o que pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muertes derivadas de la ocupación .... 11 L.P.R.A. sec. 2.

■ A la luz de esta disposición estatutaria, hemos destacado que para que un obrero o empleado pueda reclamar con éxito los beneficios que concede la ley, es preciso que el accidente que origina la solicitud de los beneficios satisfaga los tres (3) requisitos siguientes: (1) provenga de cualquier acto o función del obrero; (2) que sea inherente al trabajo o empleo del obrero, y (3) que ocurra en el curso de éste. *Admor., F.S.E. v. Comisión Industrial*, 101 D.P.R. 56, 58 (1973); véase, además, *Candelaria v. Comisión Industrial*, 85 D.P.R. 20 (1962). Claro está, un accidente que reúna estos requisitos sólo será compensable al amparo de la Ley de Compensaciones si el accidente le produce al empleado u obrero una lesión que lo incapacite para trabajar.

■ Ahora bien, la Ley de Compensaciones pretende proveer compensación ante la incapacidad sufrida por un obrero o empleado que se accidenta realizando funciones inherentes a su trabajo. Es decir, el requisito de que el accidente ocurra como consecuencia de ejecutar una "función inherente al empleo" significa que la lesión ocurra mientras el empleado u obrero realiza las labores normales de su puesto.

La prueba no revela que la condición de la señora Cátala Meléndez se haya agravado como consecuencia de los quehaceres inherentes a su puesto de Oficinista de Lotería II. La prueba pericial revela que su condición emocional se

agravó exclusivamente como consecuencia de los trámites disciplinarios administrativos que el Departamento de Hacienda siguió en su contra ante los cargos imputados. Ello surge del testimonio pericial que destaca que "[l]a situación laboral de la lesionada de, no de una, sino de tres destituciones de empleo, explica la condición emocional que padece la lesionada". Informe del Oficial Examinador, pág. 8; Apéndice, pág. 21. Además, la propia señora Cátala Meléndez lo reconoce cuando en su recurso nos afirma que "[e]l manejo altamente irregular por parte del patrono, provocando destituciones sucesivas contra la obrera-[apelante] constituye un accidente laboral genuino protegido bajo la Ley de Compensaciones". Alegato de la apelante, pág. 8. Según los hechos del caso de autos, lo anterior excluye la relación causal necesaria entre la lesión y el desempeño de las funciones inherentes al cargo de Cátala Meléndez.

Los procedimientos disciplinarios administrativos iniciados contra obreros o empleados tienen como objetivo velar por el cumplimiento de las normas establecidas dentro de los centros de trabajo. Responder a citaciones o a requerimientos de un patrono dentro de un proceso disciplinario *bona fide* no es una función inherente al empleo para los propósitos de la Ley de Compensaciones. Aunque se da en el contexto de una relación laboral, constituye una situación extraordinaria, ajena al normal desempeño de las funciones de un puesto en una empresa o un negocio. Por lo tanto, una condición emocional que surja o se agrave exclusivamente como consecuencia de recibir citaciones, notificaciones de decisiones administrativas, o por otras gestiones propias de este tipo de procedimientos, como ocurrió en el caso de autos, según la prueba pericial aportada, no constituye una lesión compensable al amparo de dicho estatuto.

Las alegaciones de la señora Cátala Meléndez están más próximas a una reclamación en concepto de daños

y perjuicios por un alegado trámite negligente del proceso administrativo que a una reclamación por un accidente ocupacional. La cubierta de la Ley de Compensaciones no tiene ese alcance. Como hemos destacado en el pasado, "[l]a Ley de Compensaciones ... no establece un seguro para indemnizar por daños. Establece un seguro de carácter remedial para compensar, en la medida limitada establecida por la propia ley, la incapacidad productiva que sobreviene a un obrero como consecuencia de un accidente o enfermedad ocupacional". *Morell v. F.S.E.*, 110 D.P.R. 709, 712–713 (1981). Véase *Villanueva Pérez v. Comisión Industrial*, 109 D.P.R. 790 (1980).

En la medida en que nos encontramos ante una lesión fuera del alcance de la cubierta de la Ley de Compensaciones por no guardar relación causal con las labores inherentes al puesto ocupado por Cátala Meléndez, no opera la exclusividad del remedio de la ley ni la inmunidad patronal.[5] El Fondo del Seguro del Estado, por lo tanto, no es el foro apropiado para dilucidar las alegaciones de la señora Cátala Meléndez.

En vista de ello, *procede confirmar la determinación de la Comisión Industrial, mediante la cual se resolvió que la condición emocional que padece la señora Cátala Meléndez no es compensable según la Ley de Compensaciones.*

*Se emitirá la sentencia confirmatoria correspondiente.*

La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

---

[5] Véase *Soc. de Gananciales v. Royal Bank de P.R.*, 145 D.P.R 178, 196–197 (1998), en el cual afirmamos que "[p]ara decidir si un patrono está cubierto por la inmunidad que confiere la ley sólo es necesario determinar si el obrero ha sufrido un accidente dentro del ámbito de la cubierta de la ley".